UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ALAN PRESSWOOD, D.C, P.C, individually and on behalf of all other Similarly situated persons, <br><br> Plaintiff, <br><br> v. <br><br> AMERICAN HOMEPATIENT, INC., and JOHN DOES 1-10 <br><br> Defendants. | Case No. 4:17-cv-1977-SNLJ |

## MEMORANDUM AND ORDER

This matter comes before the Court on plaintiff's motion for additional discovery (#59) and motion to amend the protective order (#67). Those motions have been fully briefed. For the reasons stated below, this Court will not yet rule on plaintiff's motions, but will instead grant plaintiff leave to file a supplemental memorandum within ten (10) days narrowing the scope of his discovery request commensurate with this memorandum and order. Defendant shall have five (5) days following the filing of plaintiff's supplemental memorandum for which to file a short response thereto.

**I. BACKGROUND**

This Court has previously noted the "unusually long history" of the parties' ongoing dispute, having recounted that it began in August 2014 with the filing of *Geismann v. American Homepatient, Inc.*, No. 4:14-cv-1538 (E.D. Mo.) in Missouri state court. That case was eventually removed and, as was explained in the parties' Joint

1

Proposed Scheduling Plan in this case, a "large amount of discovery" was completed during its pendency. *Geismann* was ultimately dismissed, however, because—in plaintiff's own words—"no expert was allowed in the Giesmann case." That statement references Judge White's decision to strike the expert declaration of Robert Biggerstaff (the same expert used in the current case) after his expert designation came "three years after the case was filed, and over fourth months after the deadline of expert witness disclosures expired." *Radha Giesmann, M.D., P.C. v. American HomePatient, Inc.*, 2017 WL 2709734 *3 (E.D. Mo. June 22, 2017). Faced with the evidentiary hurdle of having his expert struck, Geismann "wanted to have [his] case dismissed," which was accomplished just before a class certification hearing could be conducted, and the current plaintiff "agreed to act as a class representative" in Geismann's stead. A few weeks later, "plaintiff's attorney filed this case, which"—as this Court observed—"mirrors, almost word-for-word, the lawsuit brought by plaintiff Geismann." *Presswood v. American Homepatient, Inc.*, 2018 WL 2219434, at *1 (E.D. Mo. May 15, 2018). It, too, was removed to federal court on July 14, 2017.

Procedural history aside, both *Geismann* and the immediate case revolve around a long, ongoing search for certain "RightFax data" that plaintiff believes will show defendant violated the Telephone Consumer Protection Act by sending "unsolicited facsimile advertisements to [the] members of the putative class." *Giesmann,* 2017 WL 2709734 at *1, *3. The parties disagree whether defendant has outright stated the data no longer exists—plaintiff suggests defendant may have changed its tune as late as April 13, 2018, when it stated in one of its briefs that backup tapes do exist that may or may not

2

contain the RightFax data, even if it is no longer stored on local servers. In any event, plaintiff has continued to search for this data for quite some time and defendant has been adamant that its own search efforts have revealed that none exists.

Whatever that dispute may yield, this Court recognized the discovery efforts already completed in *Geismann* mitigated against a discovery "do-over" and, therefore, set a somewhat expedited initial discovery deadline of January 29, 2018. (#25).[1] With this deadline fast approaching, plaintiff sought a two-month extension on January 29, 2018, because the parties were unable to agree on deposition dates for two of defendant's former employees—David Morris and Jessica Riley. That extension was granted, extending the discovery deadline until April 27, 2018. (#35). On day fifty-three of the extended fifty-seven-day discovery window, plaintiff finally deposed defendant's two former employees. During those depositions, plaintiff learned "the identity of [defendant's] actual employee"—Rory McKenna—"who was instructed to perform the [unsuccessful] search for the fax transmission data." (#44, p.2). In light of learning the employee's identity, plaintiff then asked for another 30-day extension to the discovery deadline so that he could depose that (now former) employee. He "want[ed] to depose Mr. McKenna to find out what search was conducted, by whom …, and what is the default time for purging and/or overwriting the database." (#46, p. 2). Appreciating that plaintiff had just learned of McKenna's name and may have "just learned that backup tapes were created and might still exist," this Court again granted an extension so that

---

[1] The order set the deadline for January 28, 2018, which fell on a Saturday. However, the text entry for the order clarified that the deadline would be Monday, January 29, 2018.

plaintiff could continue his search for the RightFax data. (#48, p.4). The new discovery deadline was set for June 18, 2018. McKenna was not deposed, however, because of the parties' agreement to delay it "pending the forensic examination of the backup tapes." (#66, p. 6).

Indeed, on June 11, 2018, this Court agreed to allow a third party neutral to perform a search of defendant's relevant backup tapes as identified by the parties. This Court also entered a protective order mandating that a third-party neutral, rather than plaintiff's expert, perform the search. The parties eventually agreed that 26 backup tapes, created in June 2013, were most likely to contain the relevant RightFax data—this was based on information learned in the Morris deposition about defendant's retention protocols. And so, a third-party neutral, 4Discovery, LLC., took possession of the tapes on September 13, 2018, and proceeded to catalogue and inventory their contents.

On December 4, 2018, 4Discovery informed the parties that "the SQL cluster containing the RightFax database is not located on the tapes that were provided to us." (#59-1, p.3). On December 12, 2018, 4Discovery responded to clarifying questions from plaintiff's attorney stating "there appears to be both full and partial backup jobs for the RightFax databse in addition [to] the other databases" (59-1, p.1). This prompted a series of additional emails between the parties about what 4Discovery meant, with defendant's counsel eventually stating: "we don't believe 4Discovery made any representation as to whether additional backup tapes may (or may not) exist that contain backup of the RightFax SQL database containing fax transmission data—**if someone at 4Discovery**

**could confirm our understanding, that would be much appreciated**." (#59-3 (emphasis in original)). 4Discovery responded:

> 4Discovery examined the tapes that were provided to us, and there were no backups on those tapes for the RightFax database. **On those tapes, we saw reference to a backup job for the RightFax database.** However, there was no additional information that told us where the data was backed up (i.e. a specific tape number) or if it resided on any tapes that fall outside of the timeframe of interest. We were simply stating that we would need access to a data source containing the backup in order to proceed with the rest of the tasks per the protocol for this matter.

(#59-3 (emphasis added)). This response, particularly the highlighted language, has encouraged plaintiff to seek yet more time to conduct further discovery. Now, plaintiff seeks an additional 90-day extension to "allow plaintiff to continue its search for the fax logs" and an order "require[ing] defendant to produce whatever witnesses are necessary with knowledge of its electronic storage and back up procedures to allow 4Discovery to narrow its search." In addition, plaintiff requests that the protective order be amended to "clarify the duties of 4Discovery" and "set up a procedure if a dispute between the parties arises." It appears from plaintiff's motion that he wants to be able to ask 4Discovery to perform *any* task and, if defendant refuses and a stalemate ensues, have this Court "determine whether 4Discovery can perform the task." In his reply brief, he is also now asking to re-depose Morris—apparently in addition to McKenna—"who is familiar with the procedures of defendant" relative to its back-up procedures.

## II. ANALYSIS

Pursuant to Rule 16(b)(4), "[a] schedule may be modified only for good cause and with the judge's consent." FED. R. CIV. P. 16(b)(4). The Eighth Circuit has explained that

5

"[t]he primary measure of good cause is the movant's diligence in attempting to meet the scheduling order's requirements." *Harris v. FedEx Nat. LTL, Inc.*, 760 F.3d 780, 786 (8th Cir. 2014). But, "[a] district court may also consider the existence or degree of prejudice to the party opposing the modification." *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 759 (8th Cir. 2006). Ultimately, adherence to a scheduling order is necessary to achieve "the primary goal of the judiciary: to serve the just, speedy, and inexpensive determination of every action." *Id*. Thus, while diligence and prejudice sit on the pendulum of things to be weighed, it is ultimately an exercise of the court's sound discretion to decide whether further modification of a scheduling order is warranted. *Id*. (noting "the district court has broad discretion in establishing and enforcing the deadlines); *Kmak v. Am. Century Companies, Inc*., 873 F.3d 1030, 1034 (8th Cir. 2017) (explaining that a district court's decision whether to deny a motion to amend is reviewed for an abuse of discretion).

Here, plaintiff states he has been diligent in attempting to locate the RightFax data he seeks. That much seems clear enough from the record. While it can be argued that plaintiff was, perhaps, inefficient in his search—defendant takes issue with plaintiff knowing about certain underlying facts, but waiting too long to act on them—the total record seems to suggest, ultimately, that both parties have been adamant in their respective beliefs and both have pursued these beliefs with some vigor. Plaintiff is convinced defendant is obfuscating relevant information and has not hesitated to seek out as many of defendant's records and witnesses as possible, and defendant is convinced
6

plaintiff is engaged in a never-ending witch hunt—demanding total and unmitigated access to a range of sensitive information that is both inappropriate and costly to produce.

If the notion of "diligence" were judged in a vacuum, it might be easy to conclude that plaintiff has been diligent in his pursuit of the long-lost RightFax data and, thus, that he should be entitled to additional discovery. Conversely, defendant is not wrong to emphasize the prejudice that attaches to a five-year-old dispute that seems never-ending at this point—the associated cost of conducting protracted litigation and discovery, alone, has a deleterious effect. As has been explained, "the longer a plaintiff delays, the more likely the motion to amend will be denied, as protracted delay, with its attendant burdens on the opponent and the court, is itself a sufficient reason for the court to withhold permission to amend." *Steir v. Girl Scouts of the USA*, 383 F.3d 7, 12 (1st Cir. 2004); *see also Kozlov v. Associated Wholesale Grocers, Inc.*, 818 F.3d 380, 395 (8th Cir. 2016) (noting that "requiring a re-opening of discovery with additional costs" is "particularly disfavored").

It is ultimately plaintiff's rather vague, open-ended request that compels this Court to decide against granting his motions, however. Plaintiff amorphously wishes to dive into at least two more sets of backup tapes that *might* have the relevant data contained in them, he wishes to have 4Discovery do *any undefined tasks* that might seem pertinent moving forward and to have this Court resolve the inevitable stalemates, he wants "*whatever witnesses are necessary*" to be produced by defendant, and he wants to depose one of defendant's corporate representative on no less than *forty* different topics. Discovery is not winding down after all this time; rather, plaintiff's seeks to ramp it up.

7

The simple fact is, plaintiff's request for more discovery lies in speculation. His only proof that the data exists is based on a loose inference that it must exist because 4Discovery "saw reference to a backup job for the RightFax database" and because his own expert made an unsupported guess that "there is a high likelihood that at least some or all of the logs records [exist] in quarterly backups purported to be made in September of 2013 and December 2013, in addition to the June 2013 backup." If "the theoretical possibility that more documents exist sufficed to justify additional discovery, discovery would never end." *Hubbard v. Potter*, 247 F.R.D. 27, 29 (D.D.C. 2008). And so, this Court cannot condone a further expansion to discovery beyond what was contemplated in this Court's last discovery order.

That said, the fact is 4Discovery has unveiled some evidence, speculative as it is, that the relevant backup tapes of the RightFax data do exist somewhere. It may be that the parties simply chose the wrong set of tapes to review. Therefore, while this Court is not inclined to grant plaintiff the sweeping discovery he seeks, the Court is nonetheless amenable to allowing a limited, well-defined window of additional discovery so that the current discovery path the parties have been engaged in for the past several months can come to a conclusive end. It seems plaintiff wishes to review the September 2013 and December 2013 backup tapes based on the backup protocols they've already identified in seeking the June 2013 tapes. The Court will provide plaintiff ten (10) days to file an additional memorandum requesting those tapes, or other discovery, that comports with this Court's view that discovery should be narrowing down to an endpoint after more

than five years of effort. And defendant will be given an opportunity to explain how, if at all, plaintiff's revised request is prejudicial to its position.

### III. CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff is granted leave to file a supplemental memorandum within ten (10) days narrowing the scope of his discovery request commensurate with this memorandum and order. Defendant shall have five (5) days following the filing of plaintiff's supplemental memorandum for which to file a short response thereto.

So ordered this 30th day of April 2019.

```
                                    _____
                                    STEPHEN N. LIMBAUGH, JR.
                                    UNITED STATES DISTRICT JUDGE
```