UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ALAN PRESSWOOD, D.C, P.C, individually and on behalf of all other Similarly situated persons,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN HOMEPATIENT, INC., and JOHN DOES 1-10<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Case No. 4:17-cv-1977-SNLJ<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM AND ORDER

This matter comes before the Court on plaintiff's motion to reopen discovery [#92]. This matter's "unusually long history" has previously been described by this Court. *See Alan Presswood, D.C., P.C. v. American Homepatient, Inc.*, 2019 WL 1923017 (E.D. Mo. Apr. 30, 2019). Plaintiff claims that defendant violated the Telephone Consumer Protection Act ("TCPA") by sending unsolicited facsimile messages to putative class members.

Plaintiff moved for class certification on January 4, 2021. The briefing on the motion has been protracted as plaintiff continued its search for certain fax logs relevant to the case. The matter has now been fully briefed, however, and the Court will deny class certification.

1

I.      **Legal Standard**

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only. To come within the exception, a party seeking to maintain a class action must affirmatively demonstrate his compliance with [Federal Rule of Civil Procedure] 23." *Comcast Corp. v. Behrend*, 133 S.Ct. 1426, 1432 (2013) (citations omitted). First, however, the class "must be adequately defined and clearly ascertainable." *Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992, 996 (8th Cir. 2016) (internal quotation omitted).

The Rule 23 inquiry then has two parts. First, Rule 23(a) establishes four prerequisites for class certification: (1) the class is so <u>numerous</u> that joinder of all members is impracticable; (2) there are questions of law and fact <u>common</u> to the class; (3) the claims or defenses of the representative parties are <u>typical</u> of the claims or defenses of the class; and (4) the representative parties will fairly and <u>adequately</u> protect the interests of the class. Fed. R. Civ. P. 23(a). Second, a plaintiff seeking to maintain a class action must also satisfy at least one provision of Rule 23(b). *Comcast*, 133 S.Ct. at 1432. Here, plaintiff relies on Rule 23(b)(3), which requires that questions of law or fact common among class members must <u>predominate</u> over questions affecting only individual members, and a class action must be <u>superior</u> to other available methods for fairly and efficiently adjudicating the controversy. The burden is on the plaintiff. *See Coleman v. Watt*, 40 F.3d 25, 258 (8th Cir. 1994).

"The preliminary inquiry of the class certification stage may require the court to resolve disputes going to the factual setting of the case, and such disputes may overlap the merits of the case." *Luiken v. Domino's Pizza, LLC*, 705 F.3d 370, 372 (8th Cir. 2013) (internal quotation marks and citation omitted). "[C]ertification is proper only if the trial

2

court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Comcast*, 133 S.Ct. at 1432 (internal quotation marks and citation omitted).

**II.     Discussion**

Before looking at the class certification prerequisites, a brief summary of this case and its procedural history is necessary.  Defendant provides certain in-home medical equipment, such as oxygen, nebulizers, and hospital beds.  Healthcare providers provide prescriptions (known as "referrals") for these products for their patients.  Defendant became a "preferred provider" of medical equipment for Medicare recipients within a certain geographical region in June 2013.  Defendant created a one-page fax informing health care providers, in the relevant geographical areas, of its section by Medicare as a preferred provider.  Over the course of two weeks in June 2013, defendant used its in-house RightFax faxing software to attempt to send the fax to a "Target List" of doctors and healthcare providers.

Plaintiff is a chiropractic practice that prescribed medical equipment to its patients. Plaintiff allegedly received one or more of the subject faxes in June 2013.

Before plaintiff filed its lawsuit, though, Radha Geismann M.D., P.C., represented by the same counsel as plaintiff here, filed suit against defendant related to its receipt of the subject fax. Geismann filed suit on August 4, 2014, almost fourteen months after receiving the fax.  As part of discovery in that case, defendant searched its fax server, electronic databases, and the "SQL" servers used by RightFax for the transmission logs relevant to Geismann's complaint. Defendant could not locate any fax transmission logs for the period in question because, defendant explained, it did not retain fax logs as a

3

routine part of its business practice, and the fax logs from June 2013 were likely automatically overwritten, or "purged," well before Geismann filed suit.

Just before the hearing on Geismann's motion for class certification, Geismann dismissed its lawsuit. Approximately one week prior, on June 22, 2017—four years after receiving the Medicare fax—plaintiff Presswood initiated this lawsuit in Missouri State Court.

The parties have since been engaged in contentious discovery. This Court allowed plaintiff repeated discovery extensions in the name of uncovering the RightFax data plaintiff sought. In 2019, this Court, over defendant's objection, ordered a third-party inspection of 26 backup tapes from June 2013 and then of additional backup tapes from September 2013 and December 2013. [#73 at 4-5.] Nothing came of those searches. The parties had already collectively served four subpoenas on AT&T, defendant's telecommunications provider for the relevant outgoing fax transmissions, for relevant documents, to no avail. Then, plaintiff discovered the identity of another of defendant's telecommunications providers, MetTel, from whom plaintiff wanted to subpoena fax transmission logs. In line with defendant's objection, this Court observed that it "is perhaps likely that MetTel will not have any responsible documents to plaintiff's proposed subpoena." [#99 at 3.] Regardless, this Court allowed the reopening of discovery for that subpoena in June 2021 because it appeared to be plaintiff's last chance

4

to find evidence regarding whether defendant's faxes were actually received by the recipients.[1] Again, no relevant records were discovered.

The analysis of whether class certification is appropriate in this case boils down to just a few issues.  The parties do not seem to contest that approximately 14,000 fax numbers were on defendant's "Target list," that is, the list of provider fax numbers to which defendant sent its fax.  What's missing are the data confirming which fax numbers actually received the Medicare fax at issue.  **Numerosity**, then, is certainly present, but **commonality**, **typicality**, and **predominance** are called into question by the absence of the fax logs.

In the context of TCPA class actions, "each recipient must prove that his fax machine or computer received the fax," as only the persons to whom faxes were "successfully sent" suffer a discrete injury. *Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 684, 688 (7th Cir. 2013).  In the Eighth Circuit, only the person or entity that successfully receives a fax has a cause of action under the TCPA. *Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992, 997 (8th Cir. 2016) ("*Medtox Scientific*"). Here, defendant maintains that individual questions predominate over common questions because there is no evidence of any fax transmission logs showing which Medicare Faxes were successfully sent.  Defendant points out that, in fact, evidence suggests

---

[1] This Court noted in the June 2021 order that "Plaintiff also points out that, to the extent AT&T actually was defendant's service provider, the defendant was unable to provide any account numbers with AT&T to assist with the investigation." [#99 at 3.]  Defendant states in its Response Memorandum in opposition to class certification that defendant has in fact repeatedly identified the AT&T account numbers associated with the fax numbers at issue, both in this action and in *Geismann*.  This Court regrets the error, and plaintiff is admonished not to mislead the Court.

that approximately 60% of the Medicare Faxes that defendant attempted to send did not transmit. Further, without the RightFax data showing the success of the fax attempts, there is no evidence that will show, on a class-wide basis, which class members were successfully sent a fax and which were not. As a result, this Court would have to conduct thousands of mini-trials to determine which class members have a viable claim. *See, e.g.*, *St. Louis Heart Ctr., Inc. v. Vein Centers for Excellence, Inc.*, No. 4:12 CV 174 CDP, 2017 WL 2861878, at *4 (E.D. Mo. July 5, 2017).

These circumstances are not without precedent in this Court. In *St. Louis Heart Ctr., Inc.*, the defendant successfully moved to de-certify a class, arguing that there were no records available to identify which class members received a fax and which had not. This Court decertified on the grounds that the class was unascertainable and because the plaintiff had not made the requisite showing for the predominance and commonality prongs of Rule 23. *Id*. at *5. Specifically, *St. Louis Heart Center* held that, due to the absence of fax logs, there was no "classwide method for identifying class members[,]" which resulted "in a lack of cohesiveness" and "caus[ed] individual issues to predominate." *Id.*

Similarly, the Sixth Circuit affirmed the denial of class certification on predominance and ascertainability grounds due to the absence of fax transmission logs. *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 473 (6th Cir. 2017), *as corrected on denial of reh'g en banc* (Sept. 1, 2017) (hereinafter, "ASD Specialty"). In *ASD Specialty*, the plaintiff sought certification of a TCPA fax case

6

despite the absence of fax logs showing which class members were successfully sent a fax. 863 F.3d at 470. The evidence also suggested that 25% of the proposed class did not receive the faxes in question, but, without the fax logs, there was no way of knowing which class members fell into this group. *Id.*

Here, there are no fax logs to serve as common proof of successful sending, and the evidence demonstrates that nearly 60% of the class did <u>not</u> receive the fax at issue. Other courts have denied class certification in TCPA lawsuits with similar factual backdrops. See e.g., *Physicians Healthsource, Inc. v. Alma Lasers, Inc.*, Case No. 12-c-4978, 2015 WL 1538497, at *4 (N.D. Ill. Mar. 31, 2015), vacated on other grounds by 2015 WL 7444378 (N.D. Ill. July 27, 2015*); City Select Auto Sales, Inc. v. BMW Bank of N. Am. Inc.*, No. CV 13-4595 (NHS/JS), 2015 WL 5769951, at *8 (D.N.J. Sept. 29, 2015); *Brey Corp. v. LQ Mgmt. LLC*, No. CIV. JFM-11-718, 2014 WL 943445, at *1 (D. Md. Jan. 30, 2014).

Plaintiff relies on a variety of out-of-circuit cases that do not have the benefit of years of discovery that this case has.  For example, although the court in *City Select Auto Sales Inc. v. BMW Bank of N. Am. Inc.*, 867 F.3d 434, 438 (3d Cir. 2017), reversed a denial of class certification based on an absence of fax logs, the Third Circuit explained it was possible that additional evidence could be developed that might satisfy ascertainability. *Id.* at 442-43. The Third Circuit did not hold that the fax logs were unnecessary for class certification; instead, it explained: "[w]e take no position on whether the level of individualized fact-finding in this case is administratively infeasible because we are limited by the record before us." *Id*. at 442. The court never engaged in

7

analysis of whether the Rule 23(b)(3) requirements could be met in the absence of fax logs. Similarly, in other cases upon which plaintiff relies, defendants did not challenge, or the courts did not specifically analyze, how the absence of fax logs impacted the commonality or predominance elements of Rule 23. *See CE Design v. Beaty Constr.*, No. 07-c-3340, 2009 WL 192481, at *3-4 (N.D. Ill. Jan. 26, 2009) (challenging numerosity); *Sadowski v. Med 1 Online, LLC*, No. 07-c-2973, 2008 WL 2224892, at *3 (N.D. Ill. May 27, 2008) (same). With respect to the *CE Design* case, that court certified the class on a conditional basis, requiring the plaintiff to come forward with individual affidavits of enough class members to satisfy numerosity. *CE Design*, 2009 WL 192481 at *4. Indeed, the *CE Design* class was later decertified by agreement of the parties. No. 07-cv-3304, at Dkt. 76 (N.D. Ill.).

Plaintiff also argues that the absence of fax logs is not fatal to its class certification bid because class members can "self-identify"—or come forth by way of affidavit with a claim form to demonstrate whether they received faxes. Eight years have passed since the subject faxes were sent. Asking possible recipients to aver whether they had received a certain fax after so long, as defendant puts it, "strains credulity." Other courts have rejected the suggestion that affidavits serve as a sufficient substitute for common evidence. This Court in *St. Louis Heart Center* noted that: "reliance on claims forms or affidavits is especially troublesome because of the nature of the proof required. Whether someone can actually remember receiving a specific junk fax sent many years earlier raises credibility issues best determined by a trier of fact after testimony subject to cross-examination. This is an appropriate issue for a trial, but not for a claim form or affidavit."

8

2017 WL 2861878 at *4.  The Sixth Circuit also rejected the use of affidavits or claim forms to allow class members to self-identify, noting that "the reliability of an individual's recollection of having received a seven-year-old, single-page fax would be dubious at best" and that "finding out which [] of these individuals were being untruthful would require scrutinizing each affidavit and would undoubtedly be a difficult undertaking." *ASD Specialty*, 863 F.3d at 473.  As another district court put it, "the recollection of a putative class member that he, she, or it had received a particular unsolicited fax [six years earlier] would be somewhat suspect." *Brey Corp.*, 2014 WL 943445, at *1.  This Court is confident that claim forms cannot be relied on as a substitute for common evidence in the form of fax transmission logs, especially when the evidence shows that approximately 60% of the faxes failed to send successfully. The use of claim forms and affidavits would devolve into thousands of mini-trials on the issue of whether any particular class member received the fax

     Plaintiff argues that defendant should not be permitted to defeat class certification for want of the fax transmission logs because, plaintiff suggests, defendant either destroyed the logs or refused to search for them adequately.  First, as explained in footnote 1, *supra*, the Court notes that plaintiff has not always accurately represented the record in this case.  Second, the parties have been engaged in discovery regarding this particular fax for seven years.  Defendant has furnished backup tape after backup tape for independent review—one hundred backup tapes, jointly selected by the parties, were searched by an independent third-party vendor over two years.  Defendant has furnished its telecommunications provider relevant to the fax (and apparently providers not relevant

9

to the fax), and no further information regarding fax transmission data has been found. This cannot go on indefinitely. This is not a case where conditional class certification is appropriate because the fax logs might be found.

Third, that the fax logs haven't been found is not terribly surprising, and it's certainly not scandalous as plaintiff would have the Court believe. Plaintiff did not even file this lawsuit until four years after it received the fax. And counsel's first plaintiff—Geismann, which dismissed its suit on the eve of the class certification hearting—did not file its lawsuit for over a year after receiving the fax. Defendant maintained and still maintains that the fax logs had by then been overwritten (and plaintiff points to no law suggesting that defendant had any obligation to preserve the logs before the suit was filed). As the Sixth Circuit observed in *ASD Specialty*, "Perhaps if [plaintiff] had brought suit earlier, fax logs would have existed, and their absence would not pose an independent barrier to class certification." 863 F.3d at 473.

Furthermore, the absence of fax logs is not the only reason to deny certification. The evidence in this case also demonstrates that class certification is inappropriate because determining whether any particular class member provided prior express invitation or permission to receive the fax would require individual inquiries. Defendant's intended recipients included (1) existing referrals with which defendant conducts business on a regular basis, and (2) doctors and healthcare providers in contact with defendant's account executives. Approximately two-thirds of entities on the Target List had been doing business and/or exchanging faxes with defendant before the faxes

10

were sent. Even if the fax logs existed, determining which of those thousands of entities had given permission to receive faxes would require individual inquiries.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for class certification [#85] is DENIED.

**IT IS FURTHER ORDERED** that the parties shall meet and confer and provide the Court, by September 10, 2021, with a written schedule of the steps necessary to bring this case to resolution.

Dated this 19th day of August, 2021.

_____
STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE